# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

IN RE DEMETRIOS HLOROS and
ELIZABETH HLOROS,

    Debtors,

_____

KENNETH NATHAN, TRUSTEE,

    Appellant,

v.

NICHOLSON MINARDI,

    Appellee.
_____/

Case No. 17-12099

HON. DENISE PAGE HOOD

## ORDER DENYING AND DISMISSING APPEAL

## I.    INTRODUCTION

On June 12, 2017, the Bankruptcy Court entered a final order in an adversary proceeding, specifically an Order granting Defendant Nicholson Minardi's ("Minardi") Motion for Summary Judgment and denying Appellant Kenneth Nathan, Trustee's Motion for Summary Judgment. Appellant filed a timely appeal, and the matter has been fully briefed. A hearing on Appellant's appeal was held on November 15, 2017. For the reasons that follow, the Court should deny and dismiss Appellant's appeal.

## II. BACKGROUND

On or about July 11, 2014, Debtor Elizabeth Hloros entered into a lease with Minardi (the "Lease"), pursuant to which she leased from him for twelve months the residential property at 9298 Meisner, Casco Township, MI 48064 ("Property"). Paragraph 3 of the Lease stated, in part, "All buildings, additions and improvements of every kind that shall be placed or made on said premises, shall become a part of the premises and remain thereon at the termination of this lease." After taking possession and prior to the Petition Date, Debtor Demetrios Hloros (Elizabeth Hloros' husband) spent $76,850.00 to construct a 40x60-foot pole barn (the "Barn") on the Property. Minardi did not pay for the Barn or give any other consideration for the Barn's construction on the Property. Pursuant to the terms of the Lease, it is undisputed that: (1) the Lease terminated on or about July 31, 2015; and (2) Minardi – not the Hloros – owned the Barn after the Lease terminated. Notwithstanding the termination of the Lease, the Hloros continued to reside at the Property up to and through October 28, 2015, the date they filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

Appellant filed an adversary proceeding seeking to avoid the transfer of the Barn to Minardi as a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). Section 548(a)(1)(B) requires that Appellant must satisfy the following

elements to avoid a transfer:

> (i) the Hloros transferred an interest in property to Minardi;
>
> (ii) within two years before the date of the Hloros' bankruptcy petition;
>
> (iii) the Hloros received less than reasonably equivalent value in exchange for the transfer; and
>
> (iv) the Hloros were insolvent when the transfer was made, or were rendered insolvent as a result of the transfer.

Following discovery, Appellant and Minardi filed cross-motions for summary judgment. The timing of the Barn becoming property of Minardi and the solvency of the Hloros (elements ii and iv above) were not challenged by Minardi.

The Bankruptcy Court held a hearing on the cross-motions and requested additional briefing. On June 1, 2017, the Bankruptcy Court issued a bench opinion granting Minardi's motion and denying Appellant's motion. In that bench opinion, the Bankruptcy Court determined that:

> (1) based on the language in the Lease and Michigan case law regarding such language, the Barn became property of Minardi upon termination of the Lease, as opposed to upon installation;
>
> (2) because the transfer of the Barn and the Lease termination occurred at the same time, they "merged" into one inseparable transaction; and
>
> (3) as the [Appellant] sought to avoid termination of the Lease, the *Haines*[1]

---

[1] *In re Haines*, 178 B.R. 471 (Bankr. W.D. Mo. 1995).

> case applied, and policy concerns justified a "practical application" of the fraudulent transfer provisions of Section 548.

An order granting Minardi's motion and denying Appellant's motion was entered on June 12, 2017. Appellant timely filed the present appeal.

### III. APPLICABLE LAW & ANALYSIS

#### A. Standard of Review

A Bankruptcy Court's decision to grant or deny summary judgment is reviewed *de novo*. *See Employers Ins. of Wausau v. Petroleum Specialities*, 69 F.3d 98, 101 (6th Cir. 1995). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (6th Cir. B.A.P. 2007) (internal citation omitted).

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates the summary judgment standard articulated by Federal Rule of Civil Procedure 56. Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B. Analysis**

Appellant contends he is entitled to avoid the transfer of the Barn to Minardi for the benefit of the Hloros' creditors pursuant to 11 U.S.C. § 548 because: (a) it constituted a transfer of an interest of the Hloros in property; (b) made within two

5

years before the Hloros filed for bankruptcy protection; (c) while the Hloros were insolvent; and (d) for which the Hloros received less than reasonably equivalent value. Again, Minardi does not challenge that the statements in parts (b) and (c) are true, and the parties agree that the statutory avoidance period began on October 28, 2013.

### 1. *No Transfer of the Barn at the Time of Installation*

The parties disagree about the effective date of the transfer of the Barn from the Hloros to Minardi. Appellant primarily contends that the transfer of the Barn from the Hloros to Minardi was effective at the time the Barn was installed. Minardi argues that the Barn became his property by operation of law upon the termination of Lease, so there was never a transfer of the Barn.

Both parties focus on the language at Paragraph 3 of the Lease which provides, in part:

> All buildings, additions and improvements of every kind that shall be placed or made on said premises, shall become a part of the premises and remain thereon at the termination of this lease.

Both parties contend that similar lease language in a Michigan Court of Appeals decision, *Himelhochs of Northland, Inc. v. Michigan State Tax Comm'n*, 26 Mich.App. 172 (1970), governs how the Lease language should be interpreted. In *Himelhochs*, the pertinent lease language provided:

6

> [A]ll alterations, additions, improvements, and fixtures, other than trade fixtures, which may be made or installed by either of the parties hereto upon the premises . . . shall be the property of the landlord and at the termination of the lease shall remain upon and be surrendered with the premises as a part thereof[.]

*Id.* at 174. Based on that language, the *Himelhochs* court held that improvements to a leasehold became property of – and were transferred to – the landlord at the time of installation.

Appellant argues that the Lease language in this case is "substantially similar" to the *Himelhochs*' lease language and should be interpreted the same way, such that the transfer of the Barn occurred when it was installed, long before the Lease terminated.

Minardi counters that the *Himelhoch* lease provides that any installations "<u>shall be</u> the property of the landlord," which is different than the corresponding language in the Lease that improvements "<u>shall become</u> a part of the premises . . ." Minardi argues that the American Heritage Dictionary defines "be" as "to exist in actuality" or "to occupy a specified position," making it a present tense term. American Heritage Online Dictionary, 2017. http://www.ahdictionary.com (Nov. 7, 2017) (be). Minardi notes that the American Heritage Dictionary defines "become" as "to grow or come to be," which indicates change from one state to another. *Id*. (become). Minardi asserts that, based on those two definitions, the Lease language means that

7

improvements "became" property of the landlord only at the termination of the Lease. Minardi interprets the Lease language as stating that improvments "shall become a part of the premises . . . at the termination of the Lease." Appellant replies that Minardi's "trifling semantic distinction" ignores that both "be" and "become" are modified by the word "shall," which is defined in the American Heritage Dictionary as "Something that will take place or exist in the future." *Id*. (shall). The Court should note that "shall" is also defined as (and its common meaning in the law is) "To have to; must." *Id.*

The Court finds that, pursuant to the Lease language, the Barn became a part of the premises at the termination of the Lease, not when it was installed. Unlike in *Himelhochs*, where the lease language provided that improvements "shall be the property of the landlord," the Lease provides that improvements "shall become a part of the premises . . ." The former means that the improvements transferred to the landlord upon installation. The latter means that the improvements became part of the Property which, for the term of the Lease, was possessed by the Hloros (technically, Elizabeth Hloros). *Royal Oak Wholesale Co. v. Ford*, 1 Mich.App. 463, 466 (1965) (quoting *Minnis v. Newbro–Gallogly Co.*, 174 Mich. 635, 639 (1913)) ("A lease is a conveyance by the owner of an estate to another of a portion of his interest therein for a term less than his own for a valuable consideration, granting

thereby to the lessee the possession, use and enjoyment of the portion conveyed during the period stipulated."); *De Bruyn Produce Co. v. Romero*, 202 Mich.App. 92, 98(1993) (citing *Macke Laundry Service Co. v. Overgaard*, 173 Mich.App. 250, 253 (1988)) (a lessee has "possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease."); *Williams v. City of Detroit*, 127 Mich.App. 464, 468 (1983) (a landlord "surrenders possession of the leasehold and holds only a reversionary interest" during the leasehold period). Accordingly, the Court concludes that no transfer of the Barn occurred at the time it was installed.

### 2. *No Transfer of the Barn Upon Expiration of the Lease*

Appellant argues that, even if there was not a transfer of the Barn upon its installation, there was an avoidable transfer of the Barn upon termination of the Lease. Minardi disagrees (as did the Bankruptcy Court) that there was any transfer of the Barn upon the termination of the Lease. Minardi maintains that a non-collusive pre-petition termination of a lease pursuant to its terms is not an avoidable transfer within the intent of the drafters of the Bankruptcy Code.

Minardi asserts that the Hloros' rights to the Barn were inseparable and indistinguishable from the rights to the Property under the Lease, so the Hloros' rights to the Barn merged with their right to the Property upon the termination of the

9

Hloros' leasehold interest in the Barn. As a result, Minardi contends, the Hloros' interest in Property (and the Barn) was extinguished by operation of law, not a transfer. *Frenchtown Villa v. Meadors*, 117 Mich.App. 683, 689 (1982) (citation omitted) ("a tenant's right to possession of leased premises expires or terminates pursuant to the lease absent the securing of an extension"); *Matter of Wey*, 854 F.2d 196, 198 (7th Cir. 1988) ("what actually occurred when [debtor] defaulted was an extinguishment of his equity interest in the hotel, not a transfer."); *Matter of Jermoo's Inc.*, 38 B.R. 197, 203 (Bankr. W.D. Wis. 1984) (courts do not generally treat the termination of an executory contract as a "transfer" under 11 U.S.C. § 101); *In re Haines*, 178 B.R. at 477 (citation and quotations omitted) ("Possession of expired rights is the equivalent of possession of no rights."). As the court in *Matter of Jermoo's, Inc.* stated:

> It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy law would devote a substantial section of the Code to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations.

*Matter of Jermoo's Inc.*, 38 B.R. at 204. Courts have applied the same reasoning to residential leases. *See, e.g., Robinson v. Chicago Hous. Auth.*, 1995 WL 360706, at *3 (N.D. Ill. June 14, 1995).

Appellant argues that *In re Haines* (the primary case cited by Minardi and the Bankruptcy Court) is inapplicable in this case. *In re Haines* involved a non-collusive pre-petition lease termination where the trustee sought to avoid the termination of the lease as a constructively fraudulent transfer under Section 548(a)(2) – so that the lease could be revived, assumed, and assigned. During the leasehold term, the debtor-in-possession had built a restaurant on the property that was subject to lease terms stating that improvements would become property of the landlord. *In re Haines*, 178 B.R. at 473. The Court reasoned that "finding that an executory contract termination is a transfer for purposes of § 548 'would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings,' "a result that "'is not only unwarranted, but is contrary to the intent of the drafters of the code.'" *In re Haines*, 178 B.R. at 477 (quoting *In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674, 678 (D.N.J. 1992)). Appellant argues that, in this case, he is: (a) not trying to resurrect a terminated lease, and (b) only seeking to avoid the transfer of the Barn, so the policy considerations of *In re Haines* are not implicated here.

The Court finds that, although the Hloros had the exclusive right to use and possess the Property (including the Barn) during the Lease term, once the Lease ended, the Hloros had nothing left to transfer (including the Barn) because their right

11

to use and possess the Property (including the Barn) expired and they had nothing left to convey. *See Frenchtown Villa, Matter of Wey, Matter of Jermoo's, Inc. and In re Haines, supra*. As Minardi argues, holding that the Lease termination was an avoidable transfer under the Bankruptcy Code would contravene the intent of the drafters of the Bankruptcy Code and muddy the landscape for landlords dealing with insolvent debtors.

Appellant next argues that the Bankruptcy Court erred when it failed to abide by the plain language of the Bankruptcy Code when concluding that: (a) "a strict application [of 11 U.S.C. § 548] under the facts of our case is contrary to the intent of the drafters of the Code," Dkt. No. 12, Ex. D at 9, and (b) "a practical construction of the fraudulent transfer statute is warranted." Dkt. No. 12, Ex. D at 8. Appellant contends that such a ruling contravenes a basic tenet of statutory construction, as articulated by the Supreme Court: "courts must presume that a legislature says in a statute what it means and means in a statute what it says. . . When the words of a statute are clear and unambiguous, then, this first canon [of statutory construction] is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal citations omitted).

The Court rejects Appellant's argument that the plain, unambiguous language of 11 U.S.C. § 548 must be applied to the facts of this case and requires a finding of

an avoidable transfer *vis a vis* the Barn. As Minardi states, the application of *In re Haines* does not defeat established principles of statutory interpretation as suggested by Appellant. "A specific provision . . . controls one [ ] of more general application." *Bloate v. United States*, 559 U.S. 196, 207 (2010) (internal quotations omitted). Section 365 of the Bankruptcy Code addresses executory contracts and leases, and "must be given effect to the extent it conflicts with the more general provisions of Code § 548." *In re 130/40 Essex St. Dev. Corp.*, No. 03-40944, 2008 WL 4845639, at *6 (Bankr. S.D.N.Y. Oct. 22, 2008); *see also Robinson v. Chicago Hous. Auth.*, 1995 WL 360706, at *3 ("§ 365 of the Bankruptcy Code addresses the rights of the debtor with respect to executory contracts and unexpired leases and provides the procedure by which such agreements may be continued in effect post-petition. . . . [T]he structure of the Bankruptcy Code evidences the fact that Congress did not intend for debtors [who defaulted under a lease prior to the petition date] to fall within § 548.").

Accordingly, the Court concludes that there was no transfer of the Barn upon the expiration of the Lease.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Appellant's Appeal is DENIED and DISMISSED with

prejudice.

IT IS FURTHER ORDERED that the Bankruptcy Court's Order is AFFIRMED.

IT IS ORDERED.

                               s/Denise Page Hood
                               Denise Page Hood
                               Chief Judge, United States District Court

Dated: November 30, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2017, by electronic and/or ordinary mail.

                               s/LaShawn R. Saulsberry
                               Case Manager